## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL DEZI, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>ARATANA THERAPEUTICS INC., STEVEN ST. PETER and CRAIG A. TOOMAN,<br><br>                              Defendants. | Case No. _____<br><br><br>CLASS ACTION<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Michael Dezi ("Plaintiff"), by his attorneys, except for his own acts, which are alleged on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Aratana Therapeutics, Inc. ("Aratana Therapeutics" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1.      This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired Aratana Therapeutics common stock between March 16, 2015 and February 3, 2017, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934

(the "Exchange Act"). Plaintiff's claims are asserted against certain of Aratana Therapeutics' executive officers and directors.

2.      Aratana Therapeutics is a pet therapeutics company focused on licensing, developing and commercializing innovative biopharmaceutical products from companion animals. The Company has one operating segment: pet therapeutics. One of the Company's key products is ENTYCE, also known as AT-002 (capromorelin oral solution), an appetite stimulant for dogs.

3.      The Company was founded in 2010 and is headquartered in Leawood, Kansas. Aratana's stock trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "PETX."

4.      Throughout the Class Period, Aratana Therapeutics and certain of its officers and directors misrepresented the timeline regarding the commercial availability of ENTYCE, for appetite stimulation in dogs.

5.      On February 6, 2017, Aratana Therapeutics filed a report on Form 8-K with the SEC providing certain business updates in connection with the 2017 North American Veterinary Conference. The Form 8-K stated, in relevant part:

> ***The Company now anticipates that ENTYCE® (capromorelin oral solution) will be commercially available by late-2017.*** On February 2, 2017, the Company received a response from the U.S. Food and Drug Administration's Center for Veterinary Medicine ("CVM") in connection with the Company's post-approval supplement request to transfer the manufacturing of ENTYCE® to a new vendor in order to produce ENTYCE® at commercial scale. ***The CVM has requested additional information regarding the proposed transfer in order to complete the supplemental application,*** and the Company intends to work with the CVM to address its request.

Emphasis Added.

6.      On this news, Aratana Therapeutic's stock price declined from a closing price of $8.02 per share on February 3, 2017 to $6.58 per share on February 6, 2017, *a drop of approximately 18%*.

7.      As a result of Aratana Therapeutic's wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and the Class purchased Aratana Therapeutics securities at artificially inflated prices and thereby suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The federal law claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. §78aa.).  This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District.   Aratana Therapeutics' stock trades on the NASDAQ, located within this District.

## PARTIES

11.     Plaintiff Michael Dezi purchased Aratana Therapeutics securities within the Class Period and, as a result, was damaged thereby.  Plaintiff's certifications evidencing his transactions is attached hereto.

12.     Defendant Aratana Therapeutics is incorporated in Delaware, with its principal executive offices located at 11400 Tomahawk Creek Parkway, Suite 340, Leawood, KS  66211. Aratana Therapeutics' common stock trades on the NASDAQ under the ticker symbol "PETX."

13.     Defendant Steven St. Peter ("St. Peter") has at all relevant times served as the Company's Chief Executive Officer ("CEO"), President and Director.

14.     Defendant Craig Tooman ("Tooman") has served at all relevant times as the Company's Chief Financial Officer and Treasurer.

15.     Defendants St. Peter and Tooman are collectively referred to herein as the "Individual Defendants."

## CONTROLLING PERSON ALLEGATIONS

16.     By reason of the Individual Defendants' positions with the Company as executive officers, the Individual Defendants possessed the power and authority to control the contents of Aratana Therapeutics' quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material, non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and

were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### A.     Company Background

17.     Aratana Therapeutics is a pet therapeutics company focused on licensing, developing and commercializing innovative biopharmaceutical products for companion animals. The Company has one operating segment: pet therapeutics. The Company's current product portfolio includes multiple therapeutic products and product candidates in development consisting of small molecule pharmaceuticals and large molecule biologics that target large opportunities in serious medical conditions in pets.

18.     One of the Company's key products under development is ENTYCE (also known as AT-002), a capromorelin oral solution for appetite stimulation in dogs. There is a significant unmet need to stimulate appetite in dogs, as nearly 10 million dogs are diagnosed with inappetence each year.

19.     Entyce, a ghrelin receptor agonist, is a new chemical entity and is a first-of-its-kind therapeutic to treat inappetence in dogs. The therapeutic is a flavored, oral liquid prescription product that works by mimicking ghrelin, the hunger hormone, to stimulate appetite.

20.     On May 17, 2016, Aratana Therapeutics issued a press release announcing that the U.S. Food and Drug Administration's Center for Veterinary Medicine (CVM) approved ENTYCE for appetite stimulation in dogs.

**B.**     **Material Misstatements and Omissions during the Class Period**

21.     On March 16, 2015, Aratana Therapeutics filed an annual report on Form 10-K

with the SEC, announcing the Company's financial and operating results for the quarter and fiscal

year ended December 31, 2014 (the "2014 10-K").  The 2014 10-K stated, in pertinent part:

> *AT-002*
>
> *Overview*
>
> AT-002 (capromorelin) is a potent and selective ghrelin agonist, which causes appetite stimulation and growth hormone secretion. We in-licensed AT-002 from RaQualia and are developing AT-002 for the stimulation of appetite in dogs and we are also developing AT-002 for weight gain in cats and dogs.
>
> *Medical need and market opportunity*
>
> The control of hunger and satiety involves a complex system in mammals. In many acute and chronic disease states, as well as with aging, lack of appetite is a problem and can fuel a downward spiral. Malnutrition and decreased muscle mass can result from inadequate food intake regardless of the underlying condition. In humans, doctors can rationalize with the patients the importance of maintaining nutrition despite the lack of natural appetite and there are medical therapeutics approved in humans to treat inappetence. Veterinarians and pet owners cannot successfully rationalize with pets about the importance of maintaining nutrition and there are no approved medical therapeutics to treat inappetence in pets. This can be a frustrating clinical situation for the veterinarian and pet owner and often contributes to the decision to euthanize a pet. In a recent survey of veterinarians 83.6% believed that stimulation of appetite and weight gain in dogs represented a significant unmet need.
>
> Fear, pain, stress, trauma, organic disease, dental disease, oral fractures and cancer are all possible causes of inappetence in pets. For example, in pets undergoing cancer treatment, the cancer therapy is commonly stopped when the pet loses appetite and body weight. Chemotherapy is the most common form of treatment. According to our market research, inappetence is seen in approximately 30% of dogs who receive chemotherapy, although in clinical studies we observe inappetence rates to be lower but still clinically meaningful. ***We believe that, if approved, AT-002 could be an important medicine in managing inappetence and weight in cancer.***

Emphasis Added.

22.     The 2014 Form 10-K contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained therein was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23.     On May 7, 2015, Aratana Therapeutics issued a press release regarding its First Quarter 2015 financial results for the quarter ended March 31, 2015.  Aratana Therapeutics reported a net loss of $(8.8) million, or $(0.26) basic loss per share and $87.4 million in cash, cash equivalents and short-term investments ("May 2015 Press Release"). The Company also attached the press release to a Form 8-K Filed with the SEC ("May 2015 Form 8-K"). The Company stated:

> The Company completed full enrollment in the pivotal field effectiveness study in client-owned dogs with AT-002 (capromorelin, a ghrelin agonist) for appetite stimulation. Top-line results are anticipated in late June 2015.  Aratana previously submitted the CMC technical section to the CVM.

24.     On May 8, 2015, the Company filed a quarterly report on Form 10-Q ("May 2015 10Q") with the SEC, announcing the financial and operating results for the first quarter 2015. The May 2015 10Q stated, in part:

> We recently completed full enrollment in the pivotal field effectiveness study in client-owned dogs with AT-002 (capromorelin, a ghrelin agonist) for appetite stimulation. We anticipate reporting the top-line result in late June 2015.

25.     The May 2015 10Q was signed by the Individual Defendants and contained certifications pursuant to SOX by the Individual Defendants, which stated that the financial information contained in the May 2015 Form 10Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26.    On August 6, 2015, Aratana Therapeutics issued a press release ("August 2015 Press Release"), where Company executives commented on the pivotal field study of AT-002. The Company also attached the press release to a Form 8-K Filed with the SEC ("August 2015 Form 8-K"). The August 2015 Press Release stated, in pertinent part:

> <u>Positive results from the pivotal field study of AT-002 (capromorelin) in dogs with reduced appetite from a variety of causes.</u> Clinical success rates were approximately 70% for the once-daily dose of AT-002 group vs. approximately 45% for the placebo group which represents a statistically significant difference (p<0.05), thereby achieving the study's primary endpoint as agreed under protocol concurrence with the FDA's Center for Veterinary Medicine ("CVM"). Secondary endpoints including an alternative owner appetite assessment questionnaire and body weight were also achieved. AT-002 appeared to be palatable and well accepted, and none of the serious adverse events were considered to be related to AT-002 treatment. ***Aratana anticipates submitting an administrative New Animal Drug Application ("NADA") for AT-002 in dogs in 2016, which if approved, would allow the Company to commence commercialization of the product in mid-2016.***

Emphasis Added.

27.    On November 5, 2015, in a press release ("November 2015 Press Release"), Aratana Therapeutics announced the receipt of the technical section complete letter for CMC. The Company also attached the press release to a Form 8-K Filed with the SEC ("November 2015 Form 8-K"). The November 2015 press release stated in pertinent part:

> <u>CMC technical section complete letter for AT-002 (capromorelin oral solution) in dogs with reduced appetite.</u> On September 30, 2015, Aratana received the technical section complete letter for CMC, which in addition to the technical section complete letter for safety received in early 2015, constitutes the second major technical section complete letter. On August 26, 2015, Aratana submitted the technical section for effectiveness, which included results of the positive pivotal field effectiveness study conducted under protocol concurrence with the CVM. Aratana anticipates a response from the CVM by February 22, 2016. ***Aratana anticipates submitting a NADA in early 2016 and if approved, Aratana will work toward commercialization of the product in mid-2016 or shortly thereafter.*** Aratana continues its interactions with European

national agencies and believes that its efforts will lead to the successful development of AT-002 outside the U.S.

Emphasis Added.

28.     The Company issued a press release on March 14, 2016 ("March 2016 Press Release"), commenting on the receipt of the third major technical section complete letter. The Company also attached the press release to a Form 8-K Filed with the SEC ("March 2016 Form 8-K"). The press release stated in pertinent part:

> Technical Section Complete Letter for Effectiveness from FDA for ENTYCE® (capromorelin oral solution). In February 2016, the Company announced receipt of the third major technical section complete letter (effectiveness) required to file an administrative NADA for CVM approval of ENTYCE for appetite stimulation for dogs with inappetence. Aratana is finalizing the product label, completing the other minor sections and expects to submit the administrative NADA by the end of March 2016. *If approved by the CVM, Aratana anticipates commercial availability of ENTYCE in late-2016 or shortly thereafter.*

Emphasis Added.

29.     On March 15, 2016, the Company filed an annual report on Form 10-K (the "2015 10-K") which announced Aratana Therapeutics' financial and operating results for the quarter and fiscal year ended December 31, 2015. The 2015 10-K stated that "The product candidates that we believe are closest to commercialization and are a high priority for us include GALLIPRANT, ENTYCE and NOCITA, each of which we anticipate being approved for use in dogs in the United States." The 2015 Form 10-K further stated:

> We anticipate submitting an administrative NADA by the end of March 2016, which if approved, is expected to enable us to commence commercialization of ENTYCE in the United States in late-2016 or shortly thereafter. We are continuing our interactions with European national agencies, and believe that our discussions will lead to the successful development of capromorelin outside the U.S. We believe that the first claim in dogs for Europe will be either acute appetite stimulation or a chronic use weight gain claim. We

also intend to pursue capromorelin for weight gain in dogs in the U.S. as a label extension after approval of the appetite stimulation claim.

30.    The 2015 Form 10-K also promised investors that: "We expect to receive FDA approval for, product candidates GALLIPRANT, ENTYCE and NOCITA in 2016 and subsequently to commence commercialization."

31.    The 2015 Form 10-K contained certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained therein was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.    On May 5, 2016, the Company issued a press release ("May 2016 Press Release"), which was also attached the press release to a Form 8-K Filed with the SEC ("May 2016 Form 8-K"). The May 2016 Press Release stated, in pertinent part:

> Filed for FDA approval of ENTYCE® (capromorelin oral solution).
> The Company filed an administrative NADA for CVM approval of Entyce for appetite stimulation for dogs. The Animal Drug User Fee Act (ADUFA) date for approval is set for May 21, 2016. *If approved by CVM, Aratana anticipates commercial availability of Entyce in late-2016 or shortly thereafter.*

Emphasis Added.

33.    On August 4, 2016, in a press release ("August 2016 Press Release"), Aratana Therapeutics announced the recently granted FDA approval of ENTYCE. The Company also attached the press release to a Form 8-K Filed with the SEC ("August 2016 Form 8-K"). The August 2016 Press Release stated, in pertinent part:

> Granted FDA approval of ENTYCE® (capromorelin oral solution).
> The U.S. Food and Drug Administration's Center for Veterinary Medicine (CVM) approved Entyce for appetite stimulation in dogs in May 2016. *Aratana intends to commercially launch Entyce in the United States in the first quarter of 2017 in conjunction with the North American Veterinary Conference and other major veterinary conferences.*

Emphasis Added.

34.     On November 3, 2016, the Company issued a press release ("November 2016 Press Release"), which was also attached the press release to a Form 8-K Filed with the SEC ("November 2016 Form 8-K"). The Third Quarter 2016 10-Q stated, in pertinent part:

> *GALLIPRANT and ENTYCE*
>
> During the third quarter of 2016, we continued to transfer the manufacturing technology processes for GALLIPRANT and ENTYCE to our identified active pharmaceutical ingredient ("API") and formulated product contract manufacturers to provide commercial supplies. We have completed the required manufacturing validation work in regards to API for both GALLIPRANT and ENTYCE. We made additional manufacturing filings with the FDA to obtain approvals that are required for commercial launch. Further, we continue to complete the required manufacturing validation work of formulated product and packaging to produce inventory for commercial availability

35.     The statements in paragraph ¶¶21-34 above were false and misleading because Defendants failed to disclose that (i) Aratana Therapeutics did not have approval of sufficient manufacturing support to produce ENTYCE at a commercial scale; and (ii) consequently, ENTYCE was not likely to be commercially available by first quarter 2017. Accordingly, Aratana Therapeutics had misled investors with respect to the likely timeline for a commercial launch of ENTYCE. As a result of the foregoing, Aratana Therapeutics' public statements were materially false and misleading at all relevant times.

**C.     The Truth Emerges**

36.     On February 06, 2017, Aratana Therapeutics filed a report on Form 8-K with the SEC providing certain business updates in connection with the 2017 North American Veterinary Conference. The Form 8-K stated, in relevant part:

> *The Company now anticipates that ENTYCE® (capromorelin oral solution) will be commercially available by late-2017.* On February 2, 2017, the Company received a response from the U.S. Food and Drug Administration's Center for Veterinary Medicine ("CVM") in connection with the Company's post-approval supplement request to transfer the manufacturing of ENTYCE® to a new vendor in order to produce ENTYCE® at commercial scale. *The CVM has requested additional information regarding the proposed transfer in order to complete the supplemental application,* and the Company intends to work with the CVM to address its request.

Emphasis Added.

37.      On the release of the news, Aratana Therapeutics' stock price fell from a closing price of $8.02 per share on February 3, 2017, to a closing price of $6.58 per share on February 6, 2017, *a drop of approximately 18%.*

38.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in market value of the Company's securities, Plaintiff and other class members have suffered significant losses and damages.

## ADDITIONAL SCIENTER ALLEGATIONS

39.      As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Aratana Therapeutics, their control over, and/or receipt and/or modification of Aratana Therapeutics' allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Aratana Therapeutics, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION AND ECONOMIC LOSS

40. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's securities. As detailed above, when the truth about Aratana Therapeutics' misconduct and delayed commercial availability was revealed, the value of the Company's securities declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Aratana Therapeutics' share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members, was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

41. At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Aratana Therapeutics' business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Aratana Therapeutics' securities to be artificially

inflated.  Plaintiff and other Class members purchased Aratana Therapeutics' securities at those artificially inflated prices, causing them to suffer the damages complained of herein.

## PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET

42.    At all relevant times, the market for Aratana Therapeutics securities was an efficient  market for the following reasons, among others:

(a) Aratana Therapeutics securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

(b) During the Class Period, Aratana Therapeutics securities were actively traded, demonstrating a strong presumption of an efficient market;

(c) As a regulated issuer, Aratana Therapeutics filed with the SEC periodic public reports during the Class Period;

(d) Aratana Therapeutics regularly communicated with public investors via established market communication mechanisms;

(e) Aratana Therapeutics was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(f) Unexpected material news about Aratana Therapeutics was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

43.    As a result of the foregoing, the market for Aratana Therapeutics securities promptly digested current information regarding Aratana Therapeutics from all publicly available sources and reflected such information in Aratana Therapeutics' stock price.  Under these circumstances, all purchasers of Aratana Therapeutics securities during the Class Period suffered similar injury through

their purchase of Aratana Therapeutics' securities at artificially inflated prices, and a presumption of reliance applies.

44.    Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures.  Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).   All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.  Here, the facts withheld are material because an investor would have considered the Company's true likelihood of commercialization of ENTYCE, net losses and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Aratana Therapeutics.

## NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

45.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

46.    To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

47.    Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Aratana Therapeutics who knew that the "forward-looking statement" was false.  Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection,

or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired Aratana Therapeutics securities on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

49.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Aratana Therapeutics securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Aratana Therapeutics or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.  As of October 31, 2016, Aratana Therapeutics had 37,044,322 outstanding shares of common stock.  Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world.  Joinder would be highly impracticable.

50.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

51.     Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

52.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

  a.  whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

  b.  whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

  c.  whether the price of Aratana Therapeutics securities during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

  d.  whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

53.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

**(Violation of Section 10(b) and Rule 10b-5 Against All Defendants)**

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Aratana Therapeutics securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

56.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Aratana Therapeutics securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

57.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Aratana Therapeutics as specified herein.

58.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Aratana Therapeutics' value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Aratana Therapeutics and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Aratana Therapeutics securities during the Class Period.

59.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of the Individual Defendant's responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal affairs; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's internal affairs at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

60.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Aratana Therapeutics' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's business affiars throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

61.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Aratana Therapeutics' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Aratana Therapeutics' publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Aratana Therapeutics' securities during the Class Period at artificially high prices and were or will be damaged thereby.

62.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other

members of the Class and the marketplace known the truth regarding Aratana Therapeutics'
financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class
would not have purchased or otherwise acquired their Aratana Therapeutics securities, or, if they
had acquired such securities during the Class Period, they would not have done so at the artificially
inflated prices that they paid.

63.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange
Act, and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the
other members of the Class suffered damages in connection with their respective purchases and
sales of the Company's securities during the Class Period.

65.     This action was filed within two years of discovery of the fraud and within five
years of Plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II

**(The Individual Defendants Violated Section 20(a) of the Exchange Act)**

66.     Plaintiff repeats and realleges each and every allegation contained above as if fully
set forth herein.

67.     The Individual Defendants acted as controlling persons of Aratana Therapeutics
within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their
high-level positions, agency, ownership and contractual rights, and participation in and/or
awareness of the Company's operations and/or intimate knowledge of the false financial
statements filed by the Company with the SEC and disseminated to the investing public, the
Individual Defendants had the power to influence and control, and did influence and control,
directly or indirectly, the decision-making of the Company, including the content and

dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

68.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

69.     As set forth above, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

70.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

71.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)     Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other members

of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)     Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e)     Such other and further relief as the Court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demands a jury trial.

Dated: February 27, 2017

_____

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins
LEVI & KORSINSKY, LLP
733 Summer Street, Suite 304
Stamford, Connecticut 06901
Telephone:  (203) 992-4523
Facsimile:  (212) 363-7171

*Counsel for Plaintiff and Proposed Lead Counsel for the Class*